**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Angel Michael Crockford,<br>Plaintiff<br>v.<br>Clark County Department of Family Services, et al.,<br>Defendants | Case No.: 2:25-cv-00917-JAD-MDC<br><br>**Order Resolving Pending Motions and Granting Plaintiff Limited Leave to Amend His Complaint**<br><br>[ECF Nos. 145, 146, 147, 151, 152, 156, 163] |

Pro se plaintiff Angel Michael Crockford sues the Clark County Department of Family Services' Child Protective Services unit, the Clark County District Attorney's Office, individual employees of both agencies, and his ex-wife Alicia Renee Cuscianna for alleged constitutional transgressions that took place during family-court proceedings. I previously dismissed the claims against Cuscianna, narrowed Crockford's claims against the County defendants to those for monetary damages, and stayed those claims "pending the final outcome of all the state proceedings referenced in the complaint."[1] I later lifted the stay once the state-court proceedings had concluded.[2] I also granted "the defendants the ability to file a second motion to dismiss addressing Crockford's claims in this new procedural posture."[3]

The County defendants thus move to dismiss Crockford's complaint again, this time contending that the *Rooker-Feldman* doctrine and various immunities bar his § 1983 claims, he doesn't allege facts adequate to support his state-law claims, he doesn't identify a custom or

[1] ECF No. 126 at 2.

[2] ECF No. 143.

[3] *Id.* at 2.

practice to support *Monell* liability against the County, and he names parties that he cannot sue. The County defendants also seek to seal portion of the motion to dismiss because it references child-custody proceedings that are entitled to protection from public access. For his part, Crockford moves (1) to strike the County defendants' motion to dismiss because it exceeds this district's page limit by four pages; (2) for leave to file an opposition to the motion to dismiss that exceeds his page limit; (3) to terminate his ex-wife Cuscianna as a party and remove her from the CM/ECF notice list; and (4) for leave to file another amended complaint.

I deny Crockford's motion to strike the County's motion to dismiss, and I grant the dismissal motion in part. *Rooker-Feldman* does not apply here, and at this stage I do not find that any immunities preclude Crockford's claims entirely. Crockford cannot maintain claims against the prosecutors or social workers for their role in initiating proceedings against him because those defendants are entitled to prosecutorial immunity for those actions, but he can proceed with claims that the defendants committed misconduct during the investigation of the abuse allegations made against him and that they intentionally withheld exculpatory evidence from the state court. I also find that Crockford cannot state claims for municipal liability under *Monell*, malicious prosecution under § 1983, or state-law negligence.

I deny Crockford's motion for leave to file the proposed amended complaint he's provided to the court, but I grant him leave to file a new amended complaint in compliance with specific instructions. Crockford may not re-urge his claims against Cuscianna or his *Monell*, malicious-prosecution, or negligence claims; but he may file an amended complaint naming Clark County as a defendant, restructuring some of his constitutional claims, and adding a First Amendment retaliation claim. The County may file a motion to dismiss that new complaint, but it cannot reargue the jurisdictional or immunity findings contained in this order. I grant

Crockford's motions to terminate Cuscianna as a defendant and to enlarge the page limit. I also grant the County's motion to seal its motion to dismiss for the same reasons that I previously granted a similar request.

## Background[4]

Plaintiff Angel Michael Crockford shares three children with his ex-wife, Alicia Cuscianna.[5] The couple divorced in 2015, and since 2019 they have been embroiled in various family-court battles over the custody of their children.[6] Crockford alleges that between 2019 and 2024 Cuscianna made false accusations against him and neglected her children. He also alleges that various therapists and Child Protective Services (CPS) reports throughout that time confirm his account.[7]

In September 2024, the family court granted Crockford permission to relocate to North Carolina with his minor children, finding that relocation with Crockford in primary custody was in their best interests.[8] But Cuscianna refused to return the children to Crockford, so he obtained an emergency pickup order that was executed with the assistance of the Henderson Police Department.[9] After that order was enforced, Cuscianna "falsely accuse[d] [Crockford] of abuse."[10] She then allegedly encouraged one of her children, M.C., to resist the relocation, and

---

[4] The facts recited in this section are taken from Crockford's amended complaint (ECF No. 24) and are not intended as findings of fact. This is also an extremely truncated summary of Crockford's 78-page amended complaint as I focus only on the facts relevant to resolving the pending motions.

[5] ECF No. 24 at 6.

[6] *Id.* at 6–18.

[7] *Id.*

[8] *Id.* at 18.

[9] *Id.* at 20.

[10] *Id.*

the ensuing chaos led to the child attempting suicide and being placed on a psychiatric hold at the University Medical Center in Las Vegas.[11]

In December, CPS issued a substantiation of the abuse allegations that Cuscianna lodged against Crockford.[12] At some point, CPS returned M.C. to Cuscianna's care.[13] Crockford alleges that Parrish Sampson (the CPS worker assigned to his case), Michelle Fisher (Sampson's supervisor), and district attorneys (DAs) Steven Wolfson and Megan Miller all failed to properly investigate the accusations and withheld exculpatory evidence that would have precluded a substantiation finding or M.C.'s removal from Crockford's care. He also contends that they improperly initiated child-welfare proceedings based on that investigation, did not provide timely notice of the substantiation finding which prevented him from filing a timely appeal, and engaged in retaliatory conduct by proceeding with the child-welfare case.[14]

On these facts, Crockford sues CPS, the DA's office, Sampson, Fisher, Miller, and Wolfson for various civil-rights violations and malicious prosecution under 42 U.S.C. § 1983, and state-law negligence. He also contends that CPS and the DA's office are subject to municipal liability under *Monell v. Department of Social Services.*[15] He brought a § 1983 claim and several state-law claims against Cuscianna too, but I previously found that those claims could not succeed, and I dismissed them.[16] I also stayed this case under the federal-abstention

---

[11] *Id.*

[12] *Id.* at 21.

[13] *Id.*

[14] *See generally id.* at 24–26.

[15] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[16] ECF No. 126.

principles articulated in *Younger v. Harris*[17] while the underlying state-court case remained pending, but I lifted that stay in June 2026 and granted the County defendants another shot at dismissal based on jurisdictional and immunity grounds they had raised in a prior motion to dismiss.[18]

The County[19] filed that second motion to dismiss, contending that the *Rooker-Feldman* doctrine deprives this court of jurisdiction over Crockford's claims, various immunities bar suit against the County defendants, Crockford failed to name Clark County as a required party, and this court should take judicial notice of facts discussed in the state-court proceedings that contradict Crockford's allegations.[20] The County asks to seal an unredacted version of that motion because it contains confidential information derived from child-welfare proceedings.[21] Crockford moves to strike the County's motion because it exceeds this district's page limit by four pages, and he simultaneously moves to exceed the page limit on his response.[22] Crockford also moves to terminate Cuscianna as a defendant in this case,[23] while at the same time moving to amend his complaint to drag her back in as a defendant.[24] His proposed second amended complaint also supplements with new facts related to Sampson's conduct and the appeal of the

[17] *Younger v. Harris*, 401 U.S. 37 (1971).

[18] ECF No. 143.

[19] Although Clark County is not named as a defendant in Crockford's operative amended complaint, the dismissal motion filed on behalf of the County's agencies and employees refers to those defendants collectively as Clark County. ECF No. 146 at 2. I refer to the defendants interchangeably as "the County" and "the County defendants" depending on the context.

[20] ECF Nos. 146, 147.

[21] ECF No. 145.

[22] ECF Nos. 151, 152.

[23] ECF No. 156.

[24] ECF No. 163.

substantiation order, adds a new First Amendment retaliation claim, and restructures the facts and claims he asserts in his operative complaint.[25]

## Discussion

### A. Crockford's motion to strike the County defendants' motion to dismiss is denied.

Crockford moves to strike the County defendants' motion to dismiss because it violates this district's Local Rule 7-3(b), which sets a 24-page limit for motions.[26] Crockford contends that the County's motion is 4 pages too long, and the County didn't move to exceed the page limit as required under Local Rule 7-3(c). He also points out that I have already warned the parties to adhere to the page limits in this case.[27]

The County explains that its "overlength was inadvertent and not in bad faith."[28] It also contends that striking the document entirely is a harsh sanction for a minor error and that no prejudice will result from considering the oversized brief.[29] I find that, though the County did not adhere to the page-length rule, striking the motion to dismiss would only delay resolution of this case and impose a draconian sanction that does not fit the County's mistake. And I find that no prejudice would result from considering the extra pages. Crockford has moved to exceed the page limit on his response brief by 10 pages, and I find that granting that motion and considering his oversized response alleviates any concern that Crockford was not fully able to respond to the additional points made in the County's oversized brief. So I deny Crockford's motion to strike

[25] *See* ECF No. 163-2 (proposed second amended complaint).

[26] ECF No. 152.

[27] *Id.* at 3 (citing ECF No. 53).

[28] ECF No. 160 at 3.

[29] *Id.* at 3–4.

the motion to dismiss, grant his motion to exceed the page limit for his response, and consider the entirety of the briefing on the County's dismissal motion.

**B. The court disregards the state-court documents that the County defendants rely on to dispute Crockford's allegations.**

The County defendants ask that I take judicial notice of "the pleadings and papers on file, orders, and dockets in the underlying state child-welfare proceedings."[30] It contends that Crockford references some of those documents in his complaint and thus they can be considered. It further argues that Federal Rule of Evidence 201 "allows for the judicial notice of adjudicative facts that are not subject to reasonable dispute."[31] The County insists that the material facts alleged in Crockford's complaint "are all easily disproven by merely looking at the procedural posture, the minutes, and the orders filed" in the underlying family-court cases.[32]

I decline to rely on the County's attached records at this stage in the proceedings. Though the court can take judicial notice of the existence of state-court records, it cannot take judicial notice of the truth of the facts contained in those records.[33] And though Crockford references some documents from the state-court record in his complaint, the County has not established that the documents it attaches to its response are those same documents. I find that considering those documents at the motion-to-dismiss stage, and determining the truth of their contents, is inappropriate. That inquiry is better suited for the summary-judgment stage. So I

---

[30] ECF No. 147 at 23 (cleaned up).

[31] *Id.*

[32] *Id.* at 25.

[33] *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

deny the County's request for judicial notice, and I do not consider the facts contained in the exhibits referenced in its motion.[34]

**C. The *Rooker-Feldman* doctrine does not bar Crockford's claims.**

The *Rooker-Feldman* doctrine "precludes federal adjudication of a claim that 'amounts to nothing more than an impermissible collateral attack on prior state-court decisions.'"[35] "The doctrine also precludes constitutional claims that are 'inextricably intertwined' with the forbidden appeal."[36] If a challenge "require[s] review of a judicial decision in a particular case," it is inextricably intertwined and the federal district court lacks subject-matter jurisdiction to address that challenge.[37] But "when there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court."[38] The County contends that Crockford's complaint "hinge[s] on the premise that state dependency rulings were erroneous" and that "adjudicating [his] claims would require this court to sit in judgment of the state court's decisions and actions, which is jurisdictionally barred" by *Rooker-Feldman*.[39]

---

[34] I also grant the County's motion to seal an unredacted version of the motion to dismiss. ECF No. 145. I already addressed the County's reasons for sealing—and Crockford's zealous opposition—in a prior order, and I concluded that compelling reasons existed to keep documents and information related to child-welfare proceedings sealed. ECF No. 126 at 10–13. None of Crockford's arguments raised in response to the new sealing motion alters my prior conclusion, so I find that compelling reasons remain to redact the information that the County seeks to keep out of the public record.

[35] *Ignacio v. Judges of U.S. Ct. of Appeals for Ninth Circuit*, 453 F.3d 1160, 1165 (9th Cir. 2006) (quoting *Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995)) (cleaned up).

[36] *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1157 (9th Cir. 2003)).

[37] *Noel*, 341 F.3d at 1157 (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983)).

[38] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).

[39] ECF No. 147 at 12 (cleaned up).

The Ninth Circuit's opinion in *Miroth v. County of Trinity* is instructive here.[40] In underlying state-court proceedings, child-protective services obtained protective-custody warrants to remove the Miroths' children from their home, eventually leading the state court to permanently terminate the Miroths' parental rights. The Miroths filed a federal lawsuit contending that the "County defendants procured this result by defrauding the state court about [the mother's] fitness as a parent and about whether the County had provided the Miroths with required social services."[41] The district court initially dismissed the complaint under the *Rooker-Feldman* doctrine because it contained "explicit requests to overturn the state court judgment."[42] But in an amended complaint, the Miroths dropped those requests and instead "sought only money damages under § 1983 and state law."[43] The district court again dismissed the complaint under *Rooker-Feldman* because the Miroths were still "asserting the alleged errors of the state court as their legal injury" and the lawsuit thus remained "a forbidden de facto appeal."[44]

The Ninth Circuit reversed. It explained that the *Rooker-Feldman* doctrine applies only if "the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court."[45] But the doctrine doesn't necessarily apply "when the federal plaintiff sues an adverse party from a state-court proceeding and claims that the adverse party fraudulently procured the state-court judgment."[46] The panel concluded

---

[40] *Miroth v. Cnty. of Trinity*, 136 F.4th 1141 (9th Cir. 2025).

[41] *Id.* at 1145.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 1148 (quoting *Noel*, 341 F.3d at 1163).

[45] *Id.*

[46] *Id.* at 1150 (cleaned up).

that the Miroths' complaint did not contravene *Rooker-Feldman* because it dropped the request to overturn state-court judgments and did "not assert 'as a legal wrong an allegedly erroneous decision by a state court' but rather 'an allegedly illegal act or omission by an adverse party.'"[47]

Crockford's amended complaint is analytically indistinguishable from the facts presented in *Miroth*. Crockford alleges that CPS and the DAs withheld relevant exculpatory evidence and presented false information to the state court when obtaining a removal warrant based on Cuscianna's abuse allegations against him. He acknowledges that this court recently dismissed the portions of this complaint seeking a reversal of the state-court orders stemming from those misrepresentations,[48] and he now seeks only monetary damages based on the actions of CPS and the DAs.[49] Under the Ninth Circuit's narrow interpretation of the *Rooker-Feldman* doctrine, this court retains its virtually unflagging obligation to exercise subject-matter jurisdiction over this case.

**D. Crockford's failure to formally name Clark County is a curable defect that does not warrant dismissal.**

The County defendants next contend that this case must be dismissed because Nevada "has not waived immunity on behalf [of] the departments of its political subdivisions" and thus

---

[47] *Id.* at 1151 (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)); *see also Cogan v. Trabucco*, 114 F.4th 1054, 1064 (9th Cir. 2024) (noting that Ninth Circuit caselaw "has further narrowed the [*Rooker-Feldman*] doctrine as applying only to suits alleging errors by the state courts in rendering judgment, as opposed to misconduct by litigants in obtaining such a judgment"). The Ninth Circuit's limitations on *Rooker-Feldman* in this context are explained in many binding cases established well before the County defendants filed their motion to dismiss on this basis. *Miroth* itself issued a month before the motion was filed. The defendants' failure to contend with this on-point authority in its motion or reply is not well taken.

[48] *See* ECF No. 126 at 5 (dismissing declaratory and injunctive relief claims under *Younger*).

[49] *See* ECF No. 155 at 6; ECF No. 163-1 at 55 (proposed second amended complaint, seeking monetary damages only).

Crockford cannot sue CPS or the DA's office.[50] It also contends that Crockford cannot sue the individual County employees because Nevada Revised Statute (NRS) 41.0337 "requires that the appropriate political subdivision be named as a party defendant in actions brought against a public employee or officer arising out of that employee or officer's actions within the scope of their duties."[51]

Crockford responds that both defects can be easily cured by allowing him to amend his complaint to name Clark County, and he seeks leave to make that change.[52] The County defendants do not respond to that request.[53] I find that giving Crockford leave to amend his complaint to properly add Clark County would cure the defects identified in the motion to dismiss and will not prejudice the County. So, along with other amendment instructions discussed *infra*, I order Crockford to file an amended complaint naming Clark County as a defendant. Crockford must remove CPS and the DA's office from the defendant list in that new complaint.

**E. Crockford does not allege adequate facts to support a *Monell* claim.**

The County defendants move to dismiss Crockford's *Monell* claim. Under *Monell*, municipalities can be held liable for a deprivation of federal rights under § 1983 for constitutional injuries resulting from "(1) an official policy; (2) a pervasive practice or custom;

---

[50] ECF No. 147 at 14 (citing Nev. Rev. Stat. § 41.031 and *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996)).

[51] *Id.* at 15.

[52] ECF No. 155 at 10. Crockford also asserts that NRS 41.0337 doesn't apply here because it "governs allocation of liability under Nevada law and does not limit or preclude individual-capacity liability under 42 U.S.C. § 1983." But Crockford sues the individual defendants for state-law torts too, *see* ECF No. 24 at 50, so that statute might still bar some of his claims. I don't address this argument further, however, because adding Clark County as a party would resolve any NRS 41.0337 concerns.

[53] *See* ECF No. 157 (the County defendants' reply).

(3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker."[54] "A municipality's culpability for a deprivation of rights is at its most tenuous [if] a claim turns on a failure to train," and "a single instance of unlawful conduct is [generally] insufficient to state a claim for municipal liability . . . ."[55]

Crockford bases his *Monell* claim on a failure-to-train-and-supervise theory.[56] He contends that "Clark County, through its CPS and DA's office, failed to properly train and supervise staff to ensure compliance with due-process requirements and the constitutional rights of individuals involved in child-protective proceedings."[57] He asserts that "[t]he actions of both agencies reveal a broader custom or policy of disregarding exculpatory materials."[58] Crockford contends that his complaint "alleges repeated investigative failures across multiple stages of the dependency process, . . . involv[ing] multiple actors and decision points, supporting a plausible inference of systemic deficiencies in County training, supervision, review procedures, or unconstitutional practices rather than isolated error."[59] Crockford further asserts that he alleges "supervisory review and approval of these determinations without correction, supporting a plausible inference of ratification and inadequate oversight."[60]

---

[54] *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019); *see also Monell*, 436 U.S. 658.

[55] *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) (first quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011), then citing *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996)).

[56] ECF No. 24 at 47.

[57] *Id.* at 48 (cleaned up).

[58] *Id.*

[59] ECF No. 155 at 23.

[60] *Id.* at 24.

Crockford's amended complaint does not contain allegations that would support *Monell* liability against Clark County. He essentially alleges that Sampson and the DAs mishandled the investigation of Cuscianna's abuse allegations and improperly initiated a child-welfare case, and their supervisors didn't catch their mistakes. But a plausible failure-to-train or failure-to-supervise theory requires "a pattern of constitutional violations by untrained employees"[61] that reflects "a conscious or deliberate choice on the part of the municipality,"[62] which is more than a showing that the individuals involved in his case may have violated his rights.

Crockford does not allege any facts demonstrating that CPS and the DA's office have engaged in similar conduct in other cases or that supervisors regularly ignored similar issues. Nor does he point to any widespread deficiency in training or supervision that led to the harms that he alleges he suffered. Crockford's allegations instead rely on conclusory statements assuming that, because Sampson and the DAs make mistakes here, a pattern of unconstitutional training can be inferred. These unsupported statements are insufficient to support *Monell* liability on a failure-to-train-and-supervise theory.

## F. Prosecutorial immunity applies to the initiation of child-welfare proceedings, but not pre-initiation investigatory conduct by CPS and DA employees.

The County asserts that the CPS and DA employees are entitled to absolute prosecutorial immunity from Crockford's claims because his allegations target "quasi-prosecutorial functions connected with the initiation of child-dependency proceedings."[63] Crockford responds that he is

---

[61] *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022) (quoting *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014)).

[62] *Flores*, 758 F.3d at 1158 (cleaned up).

[63] ECF No. 147 at 15 (citing *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154 (9th Cir.), *cert. denied*, 484 U.S. 829 (1987); *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758 (9th Cir. 1987)) (cleaned up).

not challenging the initiation of the proceedings; he rather contends that the protective-services workers and the prosecutors undertook a deficient investigation by accepting Cuscianna's false allegations, failing to consider critical exculpatory evidence, and suppressing that evidence when making representations to the court. He asserts that his focus on the investigatory conduct of the CPS workers and DAs precludes a finding of absolute prosecutorial immunity.[64]

The Ninth Circuit has long held that prosecutorial immunity extends to social workers performing functions "connected with the initiation and pursuit of child-dependency proceedings."[65] In *Meyers v. Contra Costa County Department of Social Services*, the Ninth Circuit explained the reasoning behind extending prosecutorial immunity to child-services workers, finding that although they "do not initiate criminal proceedings, their responsibility for bringing dependency actions, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor."[66] The panel acknowledged that a social worker "must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children," and their ability to make those decisions "would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit."[67]

But the Ninth Circuit has also emphasized that not all conduct connected with child-dependency proceedings is shielded from suit. In *Hardwick v. County of Orange*, the court explained that "the factor that determines whether absolute immunity covers a social worker's

---

[64] ECF No. 155 at 11–14.

[65] *Coverdell*, 834 F.2d at 762 (quoting *Meyers*, 812 F.2d at 1157) (cleaned up).

[66] *Meyers*, 812 F.2d at 1157.

[67] *Id.*

activity or 'function' under scrutiny is whether it was investigative or administrative, on one hand, or part and parcel of presenting the state's case as a generic advocate on the other," and absolute immunity covers only the latter category.[68] In *Beltran v. Santa Clara County*, an en banc panel explained that social workers, like prosecutors, are not "entitled to immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency-petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute."[69] It emphasized that, just "as prosecutors and others investigating criminal matters have no absolute immunity for their investigatory conduct . . . , social workers conducting investigations have no such immunity."[70]

Crockford claims that the prosecutors and social workers involved in this case committed misconduct both in the investigation of Cuscianna's allegations and in the initiation of the child-dependency proceedings. He alleges that Sampson testified under oath at a hearing that she knew of exculpatory evidence but determined that it was irrelevant and did not present it to the court. He also asserts that Sampson (with Fisher's approval) and the DAs intentionally failed to review that evidence during the investigation. Taking Crockford's allegations as true and construing them liberally, as I must at this stage,[71] I find that Crockford has sufficiently alleged that at least part of his challenge relates to investigatory conduct and thus that prosecutorial immunity does not apply to the individual defendants' alleged actions during their investigation of the abuse allegations.

---

[68] *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017).

[69] *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (cleaned up).

[70] *Id.*

[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (cleaned up)); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

However, Crockford also clearly takes issue with the initiation of the dependency proceedings in general. Those allegations are not actionable because the decision to prosecute does entitle CPS and the DAs to absolute immunity. At this stage, it is nearly impossible to cleanly excise the facts supporting this second theory because the factual allegations underlying the defendants' investigatory conduct and those prosecutorial decisions are intertwined throughout the complaint. So I dismiss Crockford's claims against the CPS and DA employees to the extent they arise from the initiation-of-proceedings allegations, and I instruct the parties to limit their future briefing before this court to the theory that the defendants' investigatory conduct—including any false representations made to the court under oath or the suppression of exculpatory evidence—violated Crockford's rights.[72]

**G. At this stage in the proceedings, the court cannot determine whether other immunities apply.**

Clark County next contends that various state-law immunities and qualified immunity bar Crockford's claims.[73] It asserts that NRS 432B.160 provides immunity to "every person who in good faith refers a case or recommends the filing" of a protective-custody petition.[74] But Crockford's complaint alleges facts that, construed liberally, demonstrate bad-faith conduct related to the filings in family court, so this statutory immunity does not warrant dismissal at this stage.

[72] At later stages of this case, undisputed facts may arise that could show that the actions Crockford complains of are actually prosecutorial in nature. Although Crockford does allege enough about the investigatory posture of the case, his allegations are not a model of clarity on this point. So I do not preclude the County from raising variations of this immunity argument at the summary-judgment stage if they are supported by the record.

[73] ECF No. 147 at 18–21.

[74] *Id.* at 18.

The County also contends that Sampson and Fisher are entitled to discretionary immunity under NRS 41.032(2). "To fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy."[75] Discretionary-act immunity "does not apply to intentional torts or bad-faith conduct, as such acts are outside a public official's discretion."[76] Again, Crockford alleges bad-faith conduct, so the court does not have sufficient information at this stage to determine if the immunity applies.

Finally, the County argues that DAs Wolfson and Miller are entitled to qualified immunity.[77] It contends that "[p]roceeding on a child-welfare petition after the execution of a facially valid removal warrant is not a violation of a clearly established right."[78] But that is not the right that Crockford challenges. He instead contends that "[t]he clearly established right at issue is the right not to be subjected to child-removal or dependency proceedings procured or maintained through deliberate or reckless material misrepresentations or omissions necessary to the probable-cause or judicial-intervention determination."[79] The County does not respond to Crockford's assertion of this right, and I find that there is insufficient information to determine whether the DAs are entitled to qualified immunity on this basis. So I deny the County's motion to dismiss Crockford's complaint on the basis of state-law or qualified immunities.

---

[75] *Clark Cnty. v. Eighth Jud. Dist. Ct. in & for Clark Cnty.*, 570 P.3d 135, 147 (Nev. 2025) (quoting *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007)).

[76] *Id.* (citation omitted).

[77] ECF No. 147 at 20.

[78] *Id.* (citing *Erdman v. Cochise Cnty., Ariz.*, 926 F.2d 877, 882 (9th Cir. 1991) (finding that an arrest "was not a constitutional violation because it was [made] pursuant to a facially valid bench warrant")).

[79] ECF No. 155 at 17 (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Devereaux v. Abbey*, 263 F.3d 1070, 1074–76 (9th Cir. 2001)).

**H. Crockford's negligence claim must be dismissed because he has not alleged that the County owed him an individualized duty of care.**

The County contends that Crockford cannot state a negligence claim because "any duty alleged in child-welfare investigations runs to the public at large, not to [Crockford] individually."[80] Crockford alleges that the County defendants "owed [him] a duty of care to conduct a fair investigation and review all relevant evidence."[81] He contends that he asserts an individualized duty "arising from [the defendants'] direct investigative conduct and the foreseeable risk of harm to [him]."[82]

Generally, public agencies owe "the duty of providing [their] services . . . to the public, but not to individuals."[83] "[A] public agency may be held to have assumed a special duty to individuals" if "official conduct has created special reliance on the part of individuals" or if "the official negligence affirmatively causes the individual harm."[84] Although Crockford alleges that the defendants' negligence caused his harm, he has not explained how any particular duty to investigate child-abuse allegations extends to him individually rather than to the public at large. And he identifies no special reliance or special relationship between him, CPS, and the DAs that would create any such duty. So I grant the County's motion to dismiss Crockford's negligence claim because he cannot plead an essential element of that claim.

---

[80] ECF No. 147 at 21.

[81] ECF No. 24 at 50.

[82] ECF No. 155 at 19.

[83] *Frye v. Clark Cnty.*, 637 P.2d 1215, 1216 (Nev. 1981).

[84] *Frye*, 637 P.2d at 1216; *see also Cox v. Dep't of Soc. & Health Servs.*, 913 F.3d 831, 839 (9th Cir. 2019) (finding, under Washington law, that "a special relationship exists between [a child-protective services agency] and the dependent children it places in foster homes").

**I. Crockford's malicious-prosecution claim must be dismissed because Crockford does not allege that he was subjected to any criminal proceedings.**

The County moves to dismiss Crockford's malicious-prosecution claim, explaining that although "malicious-prosecution claims are cognizable under 42 U.S.C. § 1983, . . . in Nevada, they arise exclusively in the context of criminal prosecutions, not civil cases."[85] Crockford responds that Nevada law doesn't impact the viability of his federal malicious-prosecution claim.[86] Not so. The Ninth Circuit applies the elements of state-law malicious-prosecution claims to the same claims brought under § 1983.[87] And in Nevada, "[a] malicious-prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff."[88] Crockford alleges that his malicious-prosecution claim stems from child-dependency and welfare proceedings, not from any criminal proceedings. So Crockford cannot state a claim for malicious prosecution under § 1983, and I dismiss this claim.

**J. Crockford's request for leave to amend his complaint to re-urge claims about his ex-wife is denied, but he may add facts related to his judicial-deception claim and the results of his administrative appeal.**

Crockford seeks leave to file a second amended complaint based primarily on two factual developments.[89] First, on April 6, 2026, "the Clark County Department of Family Services

---

[85] ECF No. 147 at 22 (citing *Lechner v. Las Vegas Metro. Police Dep't*, 696 F. Supp. 3d 963, 984–85 (D. Nev. 2023); *LaMantia v. Redisi*, 38 P.3d 877, 879–80 (Nev. 2002)).

[86] ECF No. 155 at 21–22.

[87] *See Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) (applying California law to § 1983 malicious-prosecution claim).

[88] *LaMantia*, 38 P.2d at 879–80.

[89] ECF No. 163.

Internal Agency Appeals Committee overturned the substantiation findings against [him]."[90] Crockford contends that this administrative reversal "demonstrates that material exculpatory evidence existed during the CPS investigation and was sufficiently compelling to completely overturn the agency's abuse finding."[91] He argues that the reversal lends support to his allegation that Sampson "knowingly or recklessly omitted exculpatory information that would have been relevant to the issue court's probable-cause determination."[92] And he contends that his proposed complaint "alleges in substantially greater detail that . . . Sampson possessed extensive exculpatory information before seeking the November 7, 2024, removal warrant," yet that information was not provided to the juvenile court.[93]

Second, Crockford contends that "newly discovered evidence supports reinstating" his claims against Cuscianna.[94] He alleges that, after he filed his amended complaint, he "obtained evidence demonstrating that [Sampson and Cuscianna] communicated on at least fourteen separate occasions during the CPS investigation and dependency proceedings," while Sampson communicated with Crockford only once.[95] Crockford asserts that this evidence "materially strengthens [his] allegations that . . . Cuscianna was not merely a private complainant, but an active participant in coordinated governmental action that resulted in the removal of [his] daughter and the initiation of dependency proceedings."[96]

---

[90] *Id.* at 2.

[91] *Id.* at 4.

[92] *Id.*

[93] ECF No. 166 at 17.

[94] ECF No. 163 at 4–5.

[95] *Id.* at 5.

[96] *Id.*

Federal Rule of Civil Procedure 15(a)(2) directs courts to freely give parties leave to amend their pleadings "when justice so requires."[97] "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint."[98] The County contends that I should deny leave to amend under the undue-delay, prejudice, and futility factors.[99]

I am unpersuaded by the County's undue-delay and prejudice arguments. It contends that Crockford should not have waited until mid-July to seek leave to amend when the administrative reversal happened in April.[100] But I find that this relatively short three-month delay does not justify denying Crockford an opportunity to amend. As for prejudice, the County reasons that "permitting a new complaint with additional claims and a previously dismissed party would require re-briefing and delay the threshold jurisdictional and immunity rulings the court directed the parties to brief first, increasing expense and burden."[101] But I have now ruled on those issues and, as explained *infra*, I will permit Crockford to file a new version of his amended complaint that accounts for the findings and conclusions in this order. So any prejudice in re-briefing those issues will be mitigated.

---

[97] Fed. R. Civ. P. 15(a)(2).

[98] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted).

[99] ECF No. 164. The County also points out that Crockford has previously amended his complaint, but I do not find that amendment, which appears to have been permitted as a matter of course under FRCP 15(a)(1), has much weight in this analysis because it was prepared without court guidance.

[100] ECF No. 164 at 5–6.

[101] *Id.* at 6.

At this stage in the proceedings, I also cannot conclude that it would be futile to allow Crockford to add facts related to Sampson's knowledge while she was investigating abuse allegations or the fact that his appeal of the substantiation finding was successful. Those facts are directly related to the theories and claims already present in his operative amended complaint. And because I have already determined that this court has jurisdiction over Crockford's claims and the immunities that the County relies on do not warrant dismissal of his case at this pleading stage, the County's remaining futility arguments are not convincing.

Allowing amendment to re-plead claims against Cuscianna, however, would be futile. I previously found that Crockford cannot sue Cuscianna under § 1983 because she is not a state actor and her alleged conduct did not arise under color of state law.[102] I also rejected Crockford's theory that Cuscianna could be considered a state actor under the joint-action and willfull-participant theories that are used in extremely rare circumstances to hold private individuals accountable for state action.[103] Crockford's "new" allegations—that Cuscianna was frequently in touch with a CPS worker while she was making abuse allegations against Crockford—do not change those conclusions. The only difference in Crockford's new complaint is the number of communications Cuscianna had with CPS during that time. That Cuscianna was in contact with a CPS agent does not meet the "intentionally demanding" joint-action standard or show the "high degree of cooperation between private parties and state officials to rise to the level of state action."[104] And because I still find that bringing a § 1983 claim against Cuscianna

---

[102] ECF No. 126 at 5–6.

[103] *Id.* at 6–7.

[104] *Id.* at 7 (quoting *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023) (citing *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002))).

would be futile, I also reaffirm my prior order declining supplemental jurisdiction over Crockford's proposed state-law claims against her.[105]

Crockford also contends that his second amended complaint expands his allegations related to his *Monell* theory.[106] I have reviewed those amendments[107] and find that they do not cure the fatal defects identified in this order. Crockford relies on generalized accusations that the County failed to train or supervise CPS and DA employees based solely on the alleged conduct of the individual County defendants involved in his state-court case. Those allegations still do not demonstrate a pattern of constitutional violations significant enough to support a *Monell* claim.

So I grant Crockford's motion to amend in part and with several caveats. I do not permit him to file the proposed amended complaint attached to his motion for leave to amend. I instead grant him leave to file a new second amended complaint with the following changes:

- Crockford must remove CPS and the DA's office from his defendants list and replace them with Clark County as a defendant. **Crockford must also effectuate proper service of this new complaint on the County.**
- Crockford may add facts related to the individual County defendants' conduct during the investigation phase and any other facts about their representations or actions related to the substantiation findings, removal warrant, and child-welfare case in general.
- Crockford may add facts related to CPS's internal agency appeal decision.

---

[105] *See* ECF No. 126 at 7–9.

[106] ECF No. 163 at 8.

[107] *See* ECF No. 163-1 at 40–42.

- Crockford may add a claim for First Amendment retaliation against Megan Miller, Steven Wolfson, and the County.[108]
- Crockford **may not** re-urge any of his claims against Alicia Cuscianna; nor may he include a *Monell* claim, a malicious-prosecution claim, or a negligence claim against any of the defendants, consistent with the findings in this order.

I also note that Crockford's proposed amended complaint recategorizes some of his claims. In his operative complaint, Crockford asserts two generic § 1983 claims (claims one and four) against the County defendants that seem to encompass allegations related to various violations of his rights. In his proposed amended complaint, Crockford instead pursues a Fourth Amendment claim for "procurement of removal warrant through material omissions" (claim one), and procedural-due-process claim (claim two), and a familial-association claim (claim three). I find that those claims stem from the same facts alleged in the operative complaint, and Crockford's new structure more clearly specifies the elements of those claims and the facts supporting them. So in his new amended complaint, Crockford may continue structuring his claims in this manner. I also permit him to use the factual structure he's adopted in his proposed amended complaint.

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to seal **[ECF No. 145] is GRANTED.** The Clerk of Court is directed to **MAINTAIN THE SEAL at ECF No. 147.**

IT IS FURTHER ORDERED that the defendants' motion to dismiss **[ECF Nos. 146, 147] is GRANTED in part** as explained in this order.

---

[108] The County does not specifically respond to this request, so I grant it.

IT IS FURTHER ORDERED that Crockford's motion for leave to file excess pages **[ECF No. 151] is GRANTED.**

IT IS FURTHER ORDERED that Crockford's motion to strike **[ECF No. 152] is DENIED.**

IT IS FURTHER ORDERED that Crockford's motion to terminate Alicia Cuscianna as a party and remove her from the CM/ECF notice list **[ECF No. 156] is GRANTED.** The Clerk of Court is directed to **TERMINATE Cuscianna as a party and remove her from the notice list.**

IT IS FURTHER ORDERED that Crockford's motion for leave to file an amended complaint **[ECF No. 163] is DENIED, but Crockford is granted leave to file a second amended complaint that complies with the following instructions:**

- Crockford must remove CPS and the DA's office from his defendants list and replace them with Clark County as a defendant. **Crockford must also effectuate proper service of this new complaint on the County.**
- Crockford may add facts related to the individual County defendants' conduct during the investigation phase and any other facts about their representations or actions related to the substantiation findings, removal warrant, and child-welfare case in general.
- Crockford may add facts related to CPS's internal agency appeal decision.
- Crockford may add a claim for First Amendment retaliation against Megan Miller, Steven Wolfson, and the County. He may also restructure his civil-rights claims to include a Fourth Amendment claim for "procurement of removal warrant through material omissions," a procedural-due-process claim, and a familial-association claim (claims one through three of Crockford's proposed amended complaint, ECF No. 163-2).

- Crockford **may not** re-urge any of his claims against Alicia Cuscianna, and he **may not** include a *Monell* claim, a malicious-prosecution claim, or a negligence claim against any of the defendants, consistent with the findings in this order.

**Crockford must file his second amended complaint by November 11, 2026.** The County may file a motion to dismiss that complaint within 21 days of being served with it. It may not reargue the jurisdictional or immunity defenses resolved in this order. **If Crockford fails to file a second amended complaint by the deadline, his case may be dismissed and closed without further notice.**

IT IS FURTHER ORDERED that the **discovery stay in this case, *see* ECF No. 83, is LIFTED**. The parties must meet and confer in good faith and file a stipulated discovery plan and scheduling order within 30 days of service of the second amended complaint.

U.S. District Judge Jennifer A. Dorsey
October 23, 2026